# IN THE COURT OF APPEALS OF IOWA

No. 24-0180
Filed April 9, 2025

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**BILLY D. WILLIAMS DOTSON,**
       Defendant-Appellant.
_____

       Appeal from the Iowa District Court for Dubuque County,
Michael J. Shubatt, Judge.


       A criminal defendant appeals his convictions for sexual abuse in the third
degree, attempted burglary in the second degree, and assault with intent to commit
sex abuse.  **AFFIRMED.**


       Shea M. Chapin of The Chapin Center, PLC, Dubuque, for appellant.

       Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney
General, for appellee.


       Considered without oral argument by Ahlers, P.J., and Badding and
Buller, JJ.

**BULLER, Judge.**

Billy Dotson appeals three convictions relating to the rape of a young woman outside a Dubuque County apartment, asserting the evidence at trial was insufficient to support the jury's verdict. Because the victim's testimony standing alone was sufficient to support conviction, and beyond that it was supported by corroborating evidence, we affirm.

## I.     Background Facts and Proceedings

In March 2023, then-eighteen-year-old A.L. ended a casual romantic relationship with thirty-four-year-old Dotson. By May, A.L. thought things were "cool" between them as just friends, and she bought marijuana from Dotson one day at a gas station. That night, A.L. went back to her apartment around 11:30 or 11:40 p.m. About five minutes later, she heard an unexpected knock at the back door of the apartment—Dotson.

A.L. opened the door, stepped outside, and closed it behind her.[1] Dotson asked A.L. about a young man he had seen her with and then told A.L. he loved and was "crazy" about her. A.L. tried to end the interaction and go back inside, but—in her words—Dotson "tried to follow me" and "tried to step in," but she "told him you can't come in here" and "shoved him back outside the door." Dotson's foot crossed the entryway during this scuffle, but A.L. kept him from fully entering her home, pushing him back out and closing the door.

---

[1] A.L. told police and testified at trial that Dotson had a gun. The jury acquitted on some counts, suggesting they could not find proof beyond a reasonable doubt that Dotson had a dangerous weapon. So we do not dwell on facts relating to the gun.

Dotson then forced A.L. to turn around, pulled down her pants, pinned her with his body, and inserted his penis into her vagina. During the rape, A.L. heard something like part of a metal grill get knocked to the ground and make a loud noise. Dotson paused, pulled out, and started pulling his pants up; but once he realized he had not been discovered, he dragged A.L. by the hair and her shirt to a flat surface (she thought maybe an outdoor table or air conditioning unit) and resumed penetrating her until he ejaculated in her vagina. Then he kissed her and left.

A.L. cried throughout the assault. She testified that, after the initial physical resistance at the door, she did not try to fight Dotson or flee because she "didn't really want to do nothing to risk [her] life." She "just wanted to be safe" and make it back inside alive, so she could tell someone what Dotson had done. As soon as she could, A.L. went inside and told her roommate Dotson "came out there and he raped me."

A.L.'s roommate called the police, and officers responded to the apartment. Police spotted some hair on the ground near where A.L. reported being attacked and found a partial palm or handprint on an air conditioning unit consistent with where A.L. said Dotson put her on a flat surface. Officers also found disturbances in the dew on a nearby door consistent with "someone [being] shoved up against there." And they found a metal grill on the ground.

A.L. went to the hospital, where a sexual assault examination was performed and a rape kit was collected. The emergency-room physician observed that A.L. was anxious and tearful and noticed "palpable raised marks on [A.L.'s] right lateral neck" which weren't "just a simple scratch or abrasion. It was raised a

little bit." A criminalist with the DNA section at the State Crime Lab determined that Dotson's sperm was found on a swab of A.L.'s vagina, with the match to a probability of 1 out of 180 octillion.

The day after the rape, Dotson and A.L. exchanged text messages in which A.L. accused Dotson of raping her and Dotson called her a liar. A.L. maintained that she was not lying. Eventually Dotson texted her: "if I raped y u did not try to fight."

As pertinent to this appeal, the jury found Dotson guilty of sexual abuse in the third degree, a class "C" felony in violation of Iowa Code section 709.4(1)(a) (2023); attempted burglary in the second degree, a class "D" felony in violation of sections 713.2 and 713.6(1)(b); and assault with intent to commit sex abuse, an aggravated misdemeanor in violation of section 709.11(3). The district court, at a combined sentencing hearing with another case number, sentenced Dotson to consecutive terms of incarceration totaling twenty-two years—including seventeen years for convictions at issue in this case number.[2] Dotson appeals, challenging the sufficiency of the evidence supporting his convictions.

## II.     Standard of Review

We review sufficiency claims for correction of errors at law. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that

---

[2] We also affirm the sentence imposed for an unrelated crime in the other case today, in *State v. Dotson*, No. 24-0181, 2025 WL _____ (Iowa Ct. App. Apr. 9, 2025).

may fairly and reasonably be deduced from the record evidence.'"  *Id.* (citation omitted).

### III.  Discussion

We consider Dotson's challenges to each of his convictions in turn.

### A.  Sexual Abuse in the Third Degree

Dotson first challenges his conviction for sexual abuse in the third degree, which required the State to prove he performed a sex act on A.L. by force or against her will.  *See* Iowa Code § 709.4(1)(a).  Dotson admits there was sufficient evidence he performed a sex act on A.L.  But he challenges whether there was proof he performed the sex act by force or against A.L.'s will.

"The overall purpose of Iowa's sexual abuse statute is to protect the freedom of choice to engage in sex acts."  *State v. Meyers*, 799 N.W.2d 132, 143 (Iowa 2011).  "[M]eaningful consent is the important inquiry . . . ."  *Id.* at 146.  In assessing meaningful consent, we consider "all the surrounding facts and circumstances."  *Id.*; *see also* Iowa Code § 709.5 ("[T]he circumstances surrounding the commission of the act may be considered in determining whether or not the act was done by force or against the will of the other.").  "This critical element does not inquire into the mind of the defendant to create a specific-intent crime, but turns on the intentions and mental state of the victim."  *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018).

We have little trouble finding sufficient evidence in the record to establish A.L. did not meaningfully consent to Dotson repeatedly penetrating her vagina with his penis that night.  As a threshold matter, A.L.'s testimony standing alone was sufficient to support the verdict.  *See*, *e.g.*, *State v. Knox*, 536 N.W.2d 735, 742

(Iowa 1995) (en banc) ("The only direct evidence is the complainant's testimony. But under today's law that is sufficient to convict. The law has abandoned any notion that a rape victim's accusation must be corroborated."). But here the jury had more than A.L.'s word—her sworn testimony was corroborated by the injuries to her neck, her prompt report to her roommate and police, and the palm- or handprint and suspected pubic hair where she reported Dotson laid her and continued raping her. We also recognize that, although not directly probative on consent, the DNA results conclusively establish Dotson penetrated A.L.'s vagina with his penis and ejaculated inside her, which was consistent with A.L.'s report. And, independent of this, the jury was permitted to consider Dotson's own statements to A.L. via text message—including "if I raped y u did not try to fight"— as evidence reflecting consciousness of guilt. *See State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993) (discussing admissions as evidence of "consciousness of guilt"). Viewed in the light most favorable to the State, there was sufficient evidence for the jury to find beyond a reasonable doubt A.L. did not meaningfully consent to sex and that instead Dotson raped her.

We briefly note Dotson's appellate complaints that A.L. may have been able to flee or scream for help. The law required A.L. to do neither. *See* Iowa Code § 709.5 ("Under the provisions of this chapter it shall not be necessary to establish physical resistance by a person in order to establish that an act of sexual abuse was committed by force or against the will of the person."). And we agree with the State's observation that "[t]hese victim blaming propositions are immaterial and do not support disturbing the jury's verdict."

**B. Attempted Burglary in the Second Degree**

Dotson next challenges the evidence supporting the attempted second-degree burglary conviction. For this charge, the State was required to prove six elements:

> 1. On or about May 10, 2023, the defendant attempted to enter an apartment at [the address where A.L. was residing].
> 2. The apartment was an occupied structure as defined in [another instruction].
> 3. The defendant did not have permission or authority to enter the apartment.
> 4. The apartment was not open to the public.
> 5. The defendant did so with the specific intent to commit an assault.
> 6. The attempted entry occurred while one or more persons were present in the apartment.

See Iowa Code §§ 713.2, .6(1)(b). As we understand Dotson's appellate brief, he challenges the first, third, and fifth elements—whether he attempted to enter the apartment, whether he had permission or authority to do so, and whether he intended to commit an assault.

On our review, we find the evidence supports the jury verdict on all three challenged elements. First, A.L.'s testimony established Dotson attempted to enter the apartment because she described him doing exactly that. Her specific description of how Dotson "tried to follow [her] and come back in," "tried to step in," and got his foot across the threshold all support this element. Second, she testified she told Dotson "no, he couldn't come in," which is sufficient to establish he did not have permission or authority to enter. And third, there is circumstantial evidence Dotson intended to assault A.L., including most obviously that he did so as soon as he was able. See State v. Olson, 373 N.W.2d 135, 136 (Iowa 1985) ("[T]he element of intent in burglary is seldom susceptible to proof by direct evidence.").

The jury also could have reasonably inferred that Dotson's inquiries about the man he saw with A.L. were caused by jealousy due to Dotson and A.L.'s past relationship, which provided a motive fueling his intent to assault her. *See State v. Putman*, 848 N.W.2d 1, 10 (Iowa 2014) ("*Motive* is the impetus that supplies the reason for a person to commit a criminal act." (citation omitted)). The attempted-second-degree burglary conviction was supported by substantial evidence.

### C. Assault with Intent to Commit Sex Abuse

Dotson last challenges his conviction for assault with intent to commit sex abuse. For this charge, the State was required to prove that Dotson assaulted A.L. and that he did so with specific intent to commit a sex act by force or against the will. *See* Iowa Code § 709.11(3). Dotson appears to challenge both elements, focusing on how the jury seemingly concluded the State failed to prove beyond a reasonable doubt Dotson used a dangerous weapon when he raped A.L. based on the jury's verdict on other offenses.

We conclude that the use or absence of a dangerous weapon does not control our analysis of the evidence supporting this conviction. The jury could have reasonably found that Dotson committed multiple assaults as defined in section 708.1(2)(a) without a weapon—he tried to push past A.L. into the apartment, he laid hands on her and forced her to turn around, he pulled down her pants, he pinned his body against hers, he inserted his penis into her vagina repeatedly, and he pulled or dragged her from one location to another. And his intent to commit sex abuse was plain from the fact he committed sex abuse during and after the assaultive conduct. *See also State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992) (en banc) (recognizing that unwelcome sexual touching and removing

clothing can reflect intent to commit a sex abuse). There was substantial evidence to support the guilty verdict on this charge.

**IV.     Disposition**

Having concluded the jury's verdicts were supported by substantial record evidence, we affirm Dotson's convictions for sexual abuse in the third degree, attempted burglary in the second degree, and assault with intent to commit sex abuse.

**AFFIRMED.**